[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case, which was tried to the court, involves a dispute regarding the operation and ownership of a restaurant in Westport known as the Bridge Café. The plaintiffs are Adrian DiMario and Cheryl Guerrie. The defendants are John Cain and his corporation, Boutique Enterprises, Inc. In April, 1992, the plaintiffs, who were planning to open a restaurant, leased the premises at 5 Riverside Avenue, Westport, from Waldman Associates Limited Partnership. The plaintiffs spent time and money on renovating the premises to get it ready for a restaurant. They did not, however, have the funds sufficient to open a restaurant and therefore brought the defendants, John Cain and his corporation, into business with them.
On or about September 1, 1993, the plaintiffs assigned their lease of 5 Riverside Avenue, Westport, to Cain's corporation, Boutique Enterprises, Inc., with the consent of the landlord. In addition, each plaintiff loaned $5,000 to the venture. The parties agreed to form a partnership and Cain prepared a letter agreement dated September 1, 1993, which the plaintiffs and Cain signed. The agreement provided that DiMario would have a 20% interest and Cain an 80% interest in the "voting stock" of a new subchapter S corporation to be formed, with the percentages changing to 40% and 60%, respectively, "when the corporation's debt to [Cain] is fully repaid." DiMario was to become an officer of the corporation. The agreement further provided that Cain's corporation, Boutique Enterprises, Inc., which had not conducted any business or issued any stock, would be "the operating corporation." DiMario and Cain were to share the benefits equally, after payment of all operating costs and the repayment of their loans to the business, with priority given to the repayment of loans made by Cain, who furnished the bulk of the start-up money. No new subchapter S corporation was ever formed and no shares of Boutique Enterprises, Inc. were ever issued to DiMario.
The restaurant opened for business on January 7, 1994. The CT Page 15405 parties worked satisfactorily for several weeks, but on or about February 3, 1994, Cain called a meeting of the kitchen staff without notifying and including DiMario, who was operating as the chef.[1] DiMario took umbrage at this action by Cain, and walked off the job immediately and without notice. He came back the next day for a short while but refused to commit himself to working full-time as the chef in a hands-on manner. This effectively terminated the relationship between the plaintiffs and the defendants and in turn precipitated this present action by the plaintiffs.
The complaint was brought in eighteen counts, nine against Cain and the same nine against Boutique Enterprises, Inc. At trial, however, the plaintiffs withdrew the counts alleging breach of the employment agreement and defamation.
Counts two and ten, against Cain and the corporation, respectively, allege that the defendants breached the September 1, 1993 agreement by refusing to allow DiMario to have access to the restaurant and by "withholding the Plaintiff's share of the profits." In counts three and eleven, the plaintiffs allege that the defendants breached their obligation of "good faith and fair dealing." The fourth and twelfth counts refer to the time and money expended by DiMario in the several months prior to the actual opening of the restaurant in reliance on promises by the defendants that DiMario would be a 20% owner of the restaurant, with the percentage increasing as business improved. In the fifth and thirteenth counts of the complaint, the plaintiffs contend that by denying DiMario access to the premises and in refusing to pay him his share of the profits, the defendants were unjustly enriched. The sixth and fourteenth counts refer to conversion based upon the defendants' retaining DiMario's own steam table and a cooking pot worth $300, which he had brought to the restaurant. In the eighth count, the plaintiffs allege that the defendants made false and fraudulent representations about giving the plaintiffs an ownership interest in the Bridge Café, refusing to repay loans made by the plaintiffs and not paying DiMario "for the fair market value of his labor." In the sixteenth and seventeenth counts, the plaintiffs seek a dissolution of Cain's corporation, Boutique Enterprises, Inc., because of "fraud, collusion or gross mismanagement." The plaintiffs seek a "wind-up and accounting of the partnership" in the eighteenth and final count of the complaint. In their prayers for relief, the plaintiffs seek money damages, the appointment of a receiver, the dissolution of the CT Page 15406 corporation, Boutique Enterprises, Inc., and an accounting and wind-up of the "partnership" formed by Cain and the plaintiff DiMario.
After listening to the evidence and reviewing the exhibits, the court has reached the following conclusions. First, as to the loan of $5,000 made by each of the two plaintiffs to the defendants, the defendants concede that this money is due and owing to the plaintiffs. Second, the plaintiff, DiMario, breached the agreement with Cain, that he, DiMario, would work full time at the Bridge Café.[2] The more plausible evidence indicates that DiMario continued his ownership interest in the two other restaurants at the same time that the Bridge Café was open for business. Also, as mentioned previously, DiMario walked off the job, and therefore breached the agreement in this respect as well. Hence, DiMario is entitled to the return of his steam table and cooking pot, as well as repayment at this time of the loans made by each of the plaintiffs to the defendants, but none of the other damages sought in the prayers for relief. The agreement provided that any such loans would bear interest at 8% per year running from September 1, 1993, to the date of this judgment. Any dispute in calculating the proper amount of interest should be brought to the attention of this court for resolution.
So Ordered.
Dated at Stamford, Connecticut, this 31st day of December, 1998.
William B. Lewis, Judge